UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
UNITED STATES OF AMERICA,

        - against -

JAMES SEASE,

        Defendant.
---------------------------------------------------------x

**MEMORANDUM & ORDER
DENYING PRETRIAL RELEASE**
19-CR-378 (PKC)

PAMELA K. CHEN, United States District Judge:

Before the Court is Defendant James Sease's motion for pretrial release from custody, pursuant to 18 U.S.C. § 3142. (Dkt. 95.) After initially asserting three grounds for his motion,[1] Defendant now argues only that he qualifies for release because he does not present a risk of flight or a danger to the community. (Dkts. 95, 97.) The government has opposed Defendant's motion. (Dkt. 99.) For the reasons discussed herein, the Court denies Defendant's request for pretrial release.

**I.    Legal Standard**

Under the Bail Reform Act, Title 18, United States Code, Section 3141, *et seq*., a criminal defendant "shall" be detained pending trial upon a judicial finding that "no conditions or combination of conditions will reasonably assure the appearance of the [defendant] as required

---

[1] The two additional grounds initially argued by Defendant were: (1) the health risk posed by the COVID-19 pandemic; and (2) the deprivation of his Sixth Amendment right to counsel due to the inability to communicate with his counsel while incarcerated at the Metropolitan Detention Center ("MDC"). (Dkt. 95, at 1.) However, Defendant withdrew these arguments on June 12, 2020, stating, in part, that (1) the decision of the Honorable Rachel P. Kovner in *Chunn v. Edge*, No. 20-CV-1590 (RPK) (RLM), 2020 WL 3055669 (E.D.N.Y. June 9, 2020), "sets forth that the MDC has acted aggressively to combat the spread in Covid-19 by following sanitation protocols and providing inmates with masks and other means of protection[;]" and (2) "arrangements can be mad[e] for video and telephonic conferences with Mr. Sease [at the MDC]. In fact[,] a telephonic conference with him took place yesterday in which he consented to withdrawing these arguments." (Dkt. 97.)

1

and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e)(1); *see United States v. Mattis*, No. 20-1713, 2020 WL 3536277, at *4 (2d Cir. June 30, 2020) ("A district court is instructed to order the pre-trial detention of a defendant if, after a hearing, the judge 'finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.'" (quoting 18 U.S.C. § 3142(e)(1))). Dangerousness must be demonstrated by clear and convincing evidence, and risk of flight by a preponderance of the evidence. *United States v. Chimurenga*, 760 F.2d 400, 405 (2d Cir. 2001). A rebuttable presumption that "no condition or combination of conditions will reasonably assure . . . the safety of the community" applies where the "judicial officer finds that there is probable cause to believe that the person committed . . . an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.)[;] . . . [or] an offense under [18 U.S.C.] section 924(c)[.]" 18 U.S.C. § 3142(e)(3)(A), (B). To rebut the presumption, the defendant must produce "evidence that contradicts notions of flight risk or dangerousness." *United States v. Amador-Rios*, No. 18-CR-398 (RRM), 2020 WL 1849687, at *1 (E.D.N.Y. Apr. 12, 2020) (citing *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)); *see also Mattis*, 2020 WL 3536277, at *4 (holding that a defendant subject to the presumption "bears a limited burden of production . . . by coming forward with evidence that he does not pose a danger to the community" (quoting *Mercedes*, 254 F.3d at 436)).

> Once a defendant has met his burden of production . . . the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court. Even in a presumption case, the government retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community.

*Mattis*, 2020 WL 3536277, at *4 (quoting *Mercedes*, 254 F.3d at 436).

2

> In making its determination as to whether a defendant poses a danger to the community, the district court must consider the following factors set forth in 18 U.S.C. § 3142(g):
>
> (1) the nature and the circumstances of the offense charged. . .;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including [his] character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and . . .
>
> (4) the nature and seriousness of the danger to any person or to the community that would be posed by the person's release.

*Id.* at *4–5 (citation omitted).

## II.   Application

The Court finds that the presumption of detention applies in this case and that Defendant has failed to meet his modest burden of production to rebut it. The Court further finds that the government has shown, by clear and convincing evidence, that Defendant presents a risk of danger to the community, which warrants his detention pending trial.

First, the presumption applies based on Defendant's indictment on two charges: (1) Count Six, which charges Defendant with conspiring to distribute 280 grams or more of cocaine base, an offense punishable by a mandatory minimum of 10 years to life, 21 U.S.C. §§ 846, 841(b)(1)(A)(iii); and (2) Count Seven, which charges Defendant with carrying or using one or more firearms in connection with the drug trafficking conspiracy charged in Count Six, in violation of 18 U.S.C. § 924(c). (Indictment, Dkt. 24, ¶¶ 19–20.) Each of these offenses, as to which the grand jury has found probable cause to believe Defendant committed, separately triggers the presumption under Section 3142(e).

3

Second, Defendant has put forth almost no evidence that "contradicts notions of flight risk or dangerousness" as to him. *Amador-Rios*, 2020 WL 1849687, at *1. Indeed, as Defendant acknowledges, "[h]e has been arrested 6 times before this present case[,]" and "[e]arlier in his life[,] several bench warrants were issued concerning his failures to return to court." (Dkt. 95, at 3–4.) Furthermore, as the government notes, Defendant's criminal record includes prior convictions for the sale of controlled substances, assault, and drunk driving, and he "is on pre-trial release from drug charges in New York County Supreme Court." (Dkt. 99, at 3.) Defendant has also offered nothing to rebut the risk of danger he poses to the community based on his alleged involvement in a drug trafficking conspiracy that sold a large quantity of crack cocaine to members of the community, *see United States v. Leon*, 766 F.2d 77, 81 (2d Cir. 1985) (finding that danger to community includes "the harm to society caused by narcotics trafficking"), and his alleged possession and/or use of a firearm as part of that conspiracy. Defendant argues only that "five financially responsible family members and friends" are willing to sign a $100,000 bond, with a condition of home confinement, to secure his release pending trial. (Dkt. 95, at 8.) This is simply not enough to rebut the presumption of dangerousness and flight in this case, which arises out of two separate charged offenses.

Third, even if Defendant had met his burden of production, the government has established by clear and convincing evidence that Defendant poses a risk of danger to the community and that remand is necessary to protect the community, as well as to prevent Defendant's flight. As discussed, Defendant has been indicted for being a member of a drug trafficking conspiracy that sold large amounts of crack cocaine and possessed and used guns as part of the conspiracy. In addition, Defendant has been charged with RICO conspiracy as a member of a violent street gang known as the 5-9 Brims, and has also been charged with participating in a conspiracy to murder

members of a rival gang called "Real Ryte." (Indictment, Dkt. 24, ¶¶ 1–13.) These charges, in themselves, establish that Defendant poses a significant danger to the community if released. The government additionally proffers that the evidence against Defendant "is strong" and includes "[s]ocial media evidence and witness testimony [that] make clear that the defendant was a proud sign-throwing member of the 5-9 Brims, as well as a faction of the Brims called the 'Breadgang[,]' . . . [whose] members shared a strong objective of making 'bread,' or money, through their unlawful activities." (Dkt. 99, at 2–3.) The government's evidence also shows that "[a]fter one of the Breadgang's members was killed, Sease and his co-conspirators . . . were on a mission to retaliate against Real Ryte members." (*Id.* at 3.) The government further proffers that cell phone searches have revealed that Defendant's "phones were rife with evidence of his narcotics trafficking and financial scamming[, *i.e.*, credit card fraud]." (*Id.*)

Defendant's involvement in large-scale credit card fraud also demonstrates that he is a risk of flight, given his ability to access substantial amounts of money. As noted in the government's submission, one of Defendant's co-conspirators, Louis Love, was on the run for several weeks following the execution of the arrest warrants in this case. (Dkt. 99, at 4.) When Love was finally apprehended, he was in possession of approximately $100,000 in cash, funds that were presumably obtained through narcotics trafficking and/or scamming. (*Id.*) Based on this evidence, the government contends, and the Court agrees, that, if released, Defendant could have access to similar resources to flee. In fact, the sum of money that Love had at the time of his arrest would be enough to reimburse Defendant's suretors in the event he fled and the government executed on the bond that Defendant has proposed.

Lastly, if convicted of the narcotics conspiracy and firearms charges in Counts Six and Seven, Defendant faces a mandatory minimum sentence of 15 years' incarceration. 21 U.S.C.

§ 841(b)(1)(A); 18 U.S.C. 924(c). Furthermore, if convicted of the RICO and/or murder conspiracy charges, Defendant faces a substantial sentence. These potential consequences, especially in light of the government's representation about the strength of its evidence, provide a powerful incentive for Defendant to flee.

## CONCLUSION

For the foregoing reasons, the Court denies Defendant James Sease's motion for pretrial release pursuant to 18 U.S.C. § 3142.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: July 2, 2020
      Brooklyn, New York